IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY
FILED
Jul 03 2017
U.S. DISTRICT COURT
Northern District of WV

SENTRY SELECT INSURANCE COMPANY,

        Plaintiff,

v.

MIDTOWN MOTORS, INC., d/b/a
JOHN HOWARD MOTORS, RANDY BUZZO and
CHRISTOPHER AZZARO,

        Defendants.

CIVIL ACTION NO: 1:17-cv-117 (Keeley)

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, Sentry Select Insurance Company ("Plaintiff" or "Sentry"), by and through its undersigned counsel, hereby brings its Complaint for Declaratory Judgment against Midtown Motors, Inc. d/b/a John Howard Motors ("Midtown Motors"), Randy Buzzo ("Buzzo") and Christopher Azzaro ("Azzaro") (collectively "Defendants") and alleges as follows:

### THE PARTIES

1.    Plaintiff Sentry is incorporated, organized and existing under the laws of the State of Wisconsin and its principal place of business is located in Stevens Point, Wisconsin.

2.    Defendant Midtown is a West Virginia Corporation and was doing business in Monongalia County, West Virginia

3.    Defendant Buzzo is a resident of Monongalia County, West Virginia and was the owner of Midtown Motors, Inc. d/b/a John Howard Motors.

4.    Defendant Azzaro is a resident of Monongalia County, West Virginia and is the Plaintiff in the underlying action.

## NATURE OF THE CASE

5.      Pursuant to 28 U.S.C. §2201 of the federal Declaratory Judgment Act, Sentry is seeking a declaration that it has no duty to defend Midtown Motors or Buzzo nor a duty to pay any damages that might be awarded against Midtown Motors or Buzzo in that certain underlying litigation, described more fully below.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this court because there is complete diversity between the parties: Sentry is a foreign corporation with its principle place of business in Wisconsin; Defendant, Midtown Motors, is a West Virginia business entity with its principle place of business in West Virginia; Defendant, Buzzo is a West Virginia resident; Defendant Azzaro is a West Virginia resident and the controversy involves claims under insurance policies with limits in excess of $75,000.

7.      Venue is proper in this Court because the Defendant, Midtown Motors regularly conducts business in this District, the Defendant, Buzzo resides in the District, the Defendant Azzaro resides in the District, the policies of insurance at issue in this action were issued by Sentry to Midtown Motors in this District, the underlying transactions giving rise to this action took place in this District, and litigation between the underlying claimant/plaintiff and the Defendants is pending in the Circuit Court of Monongalia County, West Virginia, which is located within this District.

## THE UNDERLYING LITIGATION

8.      Sentry seeks a declaratory judgment as to its rights and obligations under policies of commercial insurance that Sentry issued to Midtown Motors, in connection with a lawsuit filed by Christopher Azzaro against Midtown Motors and Randy Buzzo ("Underlying Plaintiff") for

wrongful termination and malicious prosecution in the Circuit Court of Monongalia County, West Virginia, styled as *Christopher Azzaro v. Midtown Motors, Inc. d/b/a John Howard Motors, et al.,* Civil Action No. 15-C-147 ("Underlying Complaint" or "Underlying Litigation").  Attached as Exhibit A is a true and correct copy of the operative Underlying Complaint.

9.      The Underlying Litigation alleges wrongful termination and malicious prosecution arising out of Azzaro's employment with Midtown Motors.

10.     The Underlying Complaint asserts two counts against all Defendants: 1) unlawful retaliatory discharge and 2) malicious prosecution. The Underlying Complaint seeks compensatory, exemplary and punitive damages.

11.     The claims set forth against Defendants in the Underlying Complaint are based upon Midtown Motor's alleged acts and omissions related to Azzaro's termination and subsequent criminal charges.

12.     The Underlying Complaint alleges that as a direct and proximate result of the Defendants' actions, the Underlying Plaintiff has suffered lost wages and benefits, as well as indignity, embarrassment and humiliation.  Azzaro alleges that the actions were willful, entitling him to punitive damages, attorneys' fees and costs.

**THE SENTRY POLICIES**

13.     Sentry issued primary and excess/umbrella policies to Midtown Motors Inc. d/b/a John Howard Motors for the policy periods 9/25/14-9/25/15; 9/25/15-9/25/l6; and 9/25/16-9/25/17 (the "Policies"). The Policies include a commercial auto coverage part, an "Auto Dealers Coverage Form" which contains general liability coverage as well as an employment practices endorsement, and a Commercial Excess/Umbrella Coverage part, which contains excess/umbrella liability

coverage and an employment-practices extension endorsement.  Attached as Exhibit B are copies of the Policies.

14.     The Policies include the following insuring agreement:

## AUTO DEALERS COVERAGE FORM

**SECTION II - GENERAL LIABILITY COVERAGE**

**A.     BODILY INJURY AND PROPERTY DAMAGE LIABLITY**

**1.     COVERAGE**

a.     We will pay all sums an "insured" legally must pay as damages, including punitive damage where insurable by law, because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident", and resulting from your "Auto Dealer Operations" other than the ownership, maintenance or use of covered "autos".

We have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. But:

*  *  *  *  *

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

b.     This insurance applies to "bodily injury" and "property damage" only if:

(1) The "accident" occurs in the coverage territory;

(2) The "bodily injury" or "property damage" occurs during the policy period; and

*  *  *  *  *

*See Exhibit B, pp. 23-24.*

15.     The Auto Dealers Coverage Form, General Liability Coverages also contains the following Exclusions:

2.      EXCLUSIONS

This insurance does not apply to any of the following:

a.      EXPECTED OR INTENDED INJURY

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured". This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * * * *

d.      EMPLOYEE INDEMNIFICATION AND EMPLOYER'S LIABILITY

"Bodily injury" to:

(1)      An "employee" of the "insured" arising out of and in the course of:

(a)      Employment by the "insured"; or

(b)      Performing the duties related to the conduct of the "insured's" business;

* * * * *

*See Exhibit B, p. 25.*

(3)      A person arising out of any:

(a)      Refusal to employ that person;
(b)      Termination of that person's employment; or

(c)      Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

* * * * *

This exclusion applies:

(a)      Whether the injury-causing event described in Paragraph (3)(a), (b) or (c) above occurs before employment, during employment or after employment of that person;

(b)      Whether the "insured" may be liable as an employer or in any other capacity; and

5

(c)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Paragraphs (1) and (2) of this exclusion do not apply to liability assumed by the "insured" under an "insured contract".

* * * * *

*See Exhibit B, p. 26.*

n.      PERSONAL AND ADVERTISING INJURY

"Bodily injury" arising out of" personal and advertising injury".

*Id. at p. 31.*

16.     The Auto Dealers Coverage Form reads as follows as to Coverage B:

**B.     PERSONAL AND ADVERTISING INJURY LIABILITY**

1.      COVERAGE

We will pay all sums the "insured" legally must pay as damages, including punitive damages where insurable by law, because of "personal and advertising injury" to which this insurance applies, but only if the offense was committed in the coverage territory during the policy period.

We will have the right and duty to defend any "insured" against a "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. But:

* * * * *

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provide for under Supplementary Payments.

*Id. at p. 32.*

17.     Coverage B also contains various Exclusions, including the following:

2.      EXCLUSIONS

This insurance does not apply to:

    a.      KNOWING VIOLATION OF RIGHTS OF ANOTHER

"Personal and advertising injury" caused by or at the direction of the "insured" with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

    b.      MATERIAL PUBLISHED WITH KNOWLEDGE OF FALSITY

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the "insured" with knowledge of its falsity.

\* \* \* \* \*

    d.      CRIMINAL ACTS

Arising out of any dishonest, malicious, fraudulent, criminal or intentional act, however, this exclusion does not apply to you if such act was committed by your "employee" (other than a partner, member, director, or executive officer) without your direction or your knowledge.

\* \* \* \* \*

    f.      BREACH OF CONTRACT

"Personal and advertising injury" arising out of a breach of contract, except:

    (1)      An implied contract to use another's advertising idea in your "advertisement".

    (2)      Any alleged breach of contract in a joint advertising venture.

\* \* \* \* \*

*See Exhibit B, pp. 32-33.*

    p.      EMPLOYMENT-RELATED PRACTICES

"Personal and advertising injury" to:

    (1)      A person arising out of any:

        (a)      Refusal to employ that person;

        (b)      Termination of that person's employment; or

> > (c)    Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

*   *   *   *   *

> This exclusion applies:

> (a)    Whether the injury-causing event described in Paragraph (1)(a), (b) or (c) above occurs before employment, during employment or after employment of that person;

> (b)    Whether the "insured" may be liable as an employer or in any other capacity; and

> (c)    To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*See Exhibit B, p. 36*.

18.    The Auto Dealers Coverage Form also includes, *inter alia*, the following definitions:

**SECTION V – DEFINITIONS**

> A.    "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage."

*   *   *   *   *

> E.    "'Auto Dealer Operations" means the ownership, maintenance or use of locations for an "auto" dealership or garage business and that portion of the roads or other accesses that adjoin these locations. "Auto Dealer Operations" also include all operations necessary or incidental to an "auto" dealership or garage business.

*   *   *   *   *

> F.    "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

*   *   *   *   *

W.   "Personal and advertising injury" means Injury, including consequential "bodily injury", "mental anguish", or "mental injury", arising out of one or more of the following offenses:

1.   False arrest, detention or imprisonment;
2.   Malicious prosecution;
3.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
4.   Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
5.   Oral or written publication, in any manner, of material that violates a person's right of privacy;
6.   Common law violation of a person's right of privacy.
7.   The use of another's advertising idea in your "advertisement";
8.   Infringing upon another's copyright, trade dress or slogan in your "advertisement", or
9.   Discrimination or harassment, except employment related discrimination or harassment.

*See Exhibit B, pp. 53-58.*

19.   The Policies also include an Employment Practices Endorsement (CA 88 88 10 13), which modifies insurance provided under the Auto Dealers Coverage Form as follows:

**EMPLOYMENT PRACTICES ENDORSEMENT**

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM

With respect to the coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

\* \* \* \* \*

This policy is amended by the addition of the following:

A.   COVERAGE

1.   We will pay sums an "insured" legally must pay as damages, including punitive damages where insurable by law, because of a "wrongful act" to

which this insurance applies. This insurance applies to "wrongful acts" that result from your employment practices.

2.      We have the right and duty to defend any "insured" against any "suit" asking for these damages. However, we have no duty to defend any "insured" against a "suit" seeking damages for a "wrongful act" to which this additional insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the applicable Limit of Liability has been exhausted by the payments of judgments or settlements.

* * * * *

4.      WHO IS AN INSURED

For the purposes of this endorsement only, the following are "insured";

a.      You, the Named Insured;

b.      If you are an individual, your spouse is also an "insured";

c.      If you are a partnership, your partners and their spouses are "insured", but only with respect to the conduct of your business;

d.      If you are a limited liability company, your members are "insureds" but only with respect to the conduct of your business;

e.      Your directors and stockholders, but only with respect to the conduct of your business; and

f.      Your executive officers and other "employees" but only while acting within the course and scope of their employment.

Except with respect to the Limit of Liability, the additional insurance provided by this endorsement applies separately to each "insured".

B.      EXCLUSIONS

The additional insurance provided by this endorsement does not apply to:

1.      Any dishonest, malicious, fraudulent, criminal or intentional "wrongful act"; however, this exclusion does not apply to you if such "wrongful act" was committed by your "employees" (other than a partner, director, executive officer or if you are a limited liability company, your member or manager) without the direction or the knowledge of you or your partner,

director, executive officer or if you are a limited liability company, your member or manager.

* * * * *

7.       Fines, penalties, assessments or duties imposed by state or federal laws including, but not limited to, the Employment Retirement Income Security Act of 1974, the Fair Labor Standards Act, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Occupational Safety and Health Act, the Americans With Disabilities Act, COBRA, ERISA, Worker's Compensation Act, or any similar laws.

* * * * *

F.       DEFINITIONS

* * * * *

2.       The following definitions apply in addition to the Definitions included in the Auto Dealers Coverage Form and apply to the coverage provided by this endorsement only:

"Discrimination" is to distinguish by discerning or exposing differences based on sex, sexual orientation, age, race, religion, national origin or physical capabilities.

"Harassment" is unwelcome advances, whether verbal or physical requests for sexual favors and other verbal or physical requests for sexual favors and other verbal or physical conduct when:

a.       Submission to such conduct by an individual is made explicitly or implicitly a term or condition of employment.

b.       Submission to, or rejection of such conduct by an "employee" is used as the basis for an employment decision.

c.       Such conduct has the purpose or affect to interfere with an "employees" work performance or creates a hostile or intimidating environment.

"Wrongful act" means one or more of the following employment related offenses:

a.       "Discrimination";

b.       "Harassment"; or

c.      "Wrongful termination".

A single "wrongful act" shall include all conduct, including continuous or repeated exposure to substantially the same generally harmful conduct by an individual or group of individuals, whether directed at an individual or group of individuals.

"Wrongful termination" is termination of an employment relationship in a manner which is against the law, or in breach of an implied agreement to continue employment. Wrongful termination does not include damages legally owed under an express contract of employment or an express obligation to make payments in the event of the termination of employment.

All other terms and provisions of the policy remain unchanged.

*See Employment Practices Endorsement (CA 88 88 10 13), pp. 1-4.*

20.      The Policies also have a Commercial Excess/Umbrella Liability Coverage Part (EU 88 00 12 07).  This form provides as follows:

**Section I – Coverages**

**Coverage E – Excess Liability**

**A.      Insuring Agreement**

**1**.      We will pay on behalf of the insured the "ultimate net loss" in excess of "underlying insurance" because of:

a.      "Bodily injury";

b.      "Property damage";

c.      "Personal and advertising injury"; or

d.      "Error or omission" to which this insurance applies.

**2.**      This insurance applies to "bodily injury", "property damage", "personal and
advertising injury" and "error or omission" only if:

      **a**.     Caused by an "occurrence";

      **b**.     The "bodily injury", "property damage", "personal and advertising injury" or "error or omission" occurs during the policy period; and

      **c**.     "Underlying insurance" applies.

**3.**     This insurance is subject to the same terms, conditions, agreements, exclusions and definitions as the "underlying insurance" except:

      **a**.     We will have no obligation under this insurance with respect to any claim that is settled without our consent; and

      **b**.     With respect to any provisions to the contrary contained in this insurance.

**4.**     We will be liable only for "ultimate net loss" resulting from any one "occurrence" in excess of:

      **a**.     The applicable limits of liability of the "underlying insurance" as stated in the Declarations; or

      **b**.     The limits of "underlying insurance" that have been reduced or exhausted by payment of loss.

**5.**     The amount we will pay for the "ultimate net loss" is limited as described in **Section II - Limits of Insurance.**

**6.**     We will have no other obligation or liability to pay sums or perform acts or services unless such obligation or liability is explicitly provided for under **Coverage E Defense or Supplementary Payments - Coverage E and U.**

*See Commercial Excess/Umbrella Liability Coverage Part (EU 88 00 12 07), p. 1.*

    21.    The Excess Liability  Coverage contains Exclusions, including the following:

**C.**    **Exclusions**

This insurance does not apply to:

**1.**    **No Underlying Insurance**

"Bodily injury," "prope1ty damage," "personal and advertising injury" or "error or omission" to which "Underlying Insurance"

does not apply for any reason other than the exhaustion of "Underlying Insurance" limits of liability.

\* \* \* \* \*

**5.**  **Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

**a.**  A person arising out of any:

**(1)**  Refusal to employ that person;

**(2)**  Termination of that person's employment; or

**(3)**  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

\* \* \* \* \*

This exclusion applies:

**(1)**  Whether the injury-causing event, described in Paragraphs **a.(1), a.(2)** or **a.(3)** above occurs before employment, during employment or after employment of that person;

**(2)**  Whether the insured may be liable as an employer or in any other capacity; and

**(3)**  To any obligation to share damages with or repay someone else who must pay damages because of injury.

*Id. at p. 3.*

22.  The Policies also provide Umbrella Liability Coverage.  The Insuring Agreement within the Umbrella Liability Coverage part provides as follows:

**Coverage U - Umbrella Liability**

**A.**  **Insuring Agreement**

**1.**  We will pay on behalf of the insured the "ultimate net loss" in excess of the Retained Limit stated in the Declarations because of

"bodily injury" or " property damage" to which this insurance applies.

**2.**  This insurance applies to "bodily injury" and "property damage" only if:

    **a.**  Caused by an "occurrence" anywhere in the world;

    **b.**  The "bodily injury" or "property damage" occurs during the policy period;

    **c.**  "Underlying insurance" does not apply; and

*Id.*

23.  The Umbrella Liability Coverage also contains Exclusions, including the following:

**C.**  **Exclusions**

    **1.**  **Expected or Intended**

Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or " property damage" resulting from the use of reasonable force to protect persons or property.

* * * * *

    **3.**  **Employer's Liability**

"Bodily injury" to:

    **a.**  An "employee" or "temporary workers" of the insured arising out of and in the course of:

        **(1)**  Employment by the insured; or

        **(2)**  Performing duties related to the conduct of the insured's business; or

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

\* \* \* \* \*

**10.**     **Personal And Advertising Injury**

"Personal and advertising injury".

\* \* \* \* \*

**22.**     **Employment-Related Practices**

"Bodily injury" to:

**a.**     A person arising out of any:

**(1)**     Refusal to employ that person;

**(2)**     Termination of that person's employment; or

**(3)**     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

\* \* \* \* \*

This exclusion applies:

**(1)**     Whether the injury-causing event described in Paragraphs **a.(1), a.(2) or a.(3)** above occurs before employment, during employment or after employment of that person;

**(2)**     Whether the insured may be liable as an employer or in any other capacity; and

**(3)**     To any obligation to share damages with or repay someone else who must pay damages because of injury.

*Id., at pp. 4-7.*

24.     Coverage U – Umbrella Liability Coverage also contains a Definitions Section,

including the following Definitions:

**Section V** – **Definitions**

\* \* \* \* \*

**6**.     "Bodily injury" means bodily injury, disability, sickness or disease sustained by a person, including death resulting from any of these at any

time. "Bodily injury" includes mental anguish or other mental injury resulting from "bodily injury".

Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services, or death resulting at any time from the "bodily injury".

\* \* \* \* \*

24. "Occurrence" means:

 **a**. With respect to "bodily injury" and "property damage," an accident, including continuous or repeated exposure to substantially the same general harmful conditions;

 **b.** With respect to "personal and advertising injury," an offense; and

 **c.** With respect to "error and omission," a negligent act.

\* \* \* \* \*

25. "Personal and advertising injury" means, injury, including consequential "bodily injury", arising out of one or more of the following offenses:

 **a.** False arrest, detention or imprisonment;

 **b.** Malicious prosecution;

 **c.** The wrongful eviction from, wrongful entry into or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

 **d.** Oral or written publication, in any manner, of material that slanders a person or organization or disparages a person's or organization's goods, products or services;

 **e.** Common law violation of a person's right of privacy;

 **f.** Discrimination against or harassment of a person if:

  **(1)** Coverage for such discrimination or harassment is permitted by law; and

  **(2)** The discrimination or harassment is not committed by or at the direction of:

17

        **(a)**    You;

        **(b)**    If you are an individual, your spouse;

        **(c)**    If you are a partnership, a partner or his or her spouse;

        **(d)**    If you are a joint venture, a member of the joint venture or his or her spouse;

        **(e)**    If you are a limited liability company, any or your members or managers; or

        **(f)**    If you are an organization other than a partnership, joint venture, or limited liability company, any of your "executive officers", directors, or stockholders.

    **g.**    The use of another's advertising idea in your "advertisement"; or

    **h.**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

* * * * *

    **37.**    "Underlying insurance" means any policies of insurance listed in the Declarations under the schedule of "underlying insurance". "Underlying insurance" that would apply but for the exhaustion of its Limit of Insurance is still considered to be applicable "underlying insurance".

*Id. at pp. 14-18.*

25.    The Commercial Excess/Umbrella Liability Coverage part also includes an Employment Practices Extension Endorsement (EU 88 01 12 09), which modifies insurance provided under the Commercial Excess/Umbrella Liability Coverage Part as follows:

**EMPLOYMENT PRACTICES EXTENSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL EXCESS/UMBRELLA LIABILITY COVERAGE PART

(If no entry appears above, information required to complete this endorsement will be shown in the Declaration as applicable to this endorsement.)

A.    SECTION I - COVERAGES is amended as follows:

1.      The following is added to COVERAGE E - EXCESS LIABILITY, Paragraph A. INSURING AGREEMENT:

We will pay on behalf of the insured the "ultimate net loss" in excess of "underlying insurance" because of a "wrongful act" to which this insurance applies. This insurance applies to a "wrongful act" that results from your employment practices and only if the "wrongful act" first took place during the policy period.

2.      COVERAGE E - EXCESS LIABILITY, Paragraph C. EXCLUSIONS is amended by replacing exclusion 5. EMPLOYMENT RELATED PRACTICES with the following:

"Personal and advertising injury" to:

a.      A person arising out of any:

(1)      Refusal to employ that person;

(2)      Termination of that person's employment;

(3)      Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline "harassment", humiliation, "discrimination" or "wrongful termination" directed at that person; or

* * * * *

This exclusion applies whether the insured may be liable as an employer or in any other capacity, and to any obligation to share damage with or repay someone else who must pay damages because of injury.

* * * * *

C.      SECTION V - DEFINITIONS is amended as follows:

3.      The following definitions are added:

a.      "Discrimination" is to distinguish by discerning or exposing differences based on sex, sexual orientation, race, religion, national origin or physical capabilities.

b.      "Harassment" is unwelcome advances, whether verbal or physical, requests for sexual favors or other verbal or physical contact when:

(1)    Submission to such conduct by an individual is made explicitly or implicitly a term or condition of employment.

(2)    Submission to, or rejection of such conduct by an "employee" is used as the basis for an employment decision.

(3)    And such conduct has the purpose or affect to interfere with an "employee's" work performance, or creates a hostile or intimidating environment.

c.    "Wrongful act" means one or more of the following employment related offenses:

(1)    "Discrimination";

(2)    "Harassment"; or

(3)    "Wrongful termination".

A single "wrongful act" shall include all conduct, including continuous or repeated exposure to substantially the same generally harmful conduct by an individual or group of individuals, whether directed at an individual or group of individuals.

d.    "Wrongful termination" is termination of an employment relationship in a manner which is against the law or in breach of an implied agreement to continue employment. Wrongful termination does not include damages legally owed under an express contract of employment or an express obligation to make payments in the event of the termination of employment.

*See Employment Practices Extension Endorsement (EU 88 01 12 09) pp. 1-3.*

## THE PARTIES' DISPUTE AS TO COVERAGE

26.    Midtown Motors and Buzzo requested a defense from Sentry against the Underlying Complaint and Sentry agreed to provide a defense, subject to a complete reservation of Sentry's rights under the Policies which was communicated to Midtown Motors and Buzzo via letter on April 1, 2015 and February 1, 2017. Attached as Exhibit C are true and correct copies of the reservation of rights letters.

27.     After the filing of the Amended Complaint in the Underlying Litigation wherein the malicious prosecution count was added, Sentry provided a supplement to its reservations of rights letter dated May 1, 2017 to Midtown Motors and Buzzo.  Attached as Exhibit D is a true and correct copy of the supplement to the reservation of rights letter dated May 1, 2017.

28.     Sentry agreed to provide a defense to Midtown Motors and Buzzo in the Underlying Litigation subject to a reservation of rights as the facts and allegations upon which Sentry based its coverage determination were not fully developed.

29.     It is Sentry's position that it does not owe a duty to defend or indemnify Midtown Motors and Buzzo for the Underlying Litigation, based upon the terms and conditions of the Policies, including applicable exclusions and endorsements.

## COUNT I - DECLARATORY JUDGMENT

30.     Paragraphs 1 through 29 above are incorporated herein by reference.

31.     The Policies state that Sentry has a duty to defend Midtown Motors and/or Buzzo in any suit seeking damages due to "bodily injury" or "property damage" to which this insurance applies caused by an "accident", and resulting from your "Auto Dealer Operations"…

32.     The Underlying Plaintiff has alleged wrongful termination and malicious prosecution.

33.     The Policies contain both underlying general liability coverage (the "Primary Coverage" or "Primary Policy") and commercial excess/umbrella coverage (the "Excess/Umbrella Coverage" or "Excess/Umbrella Policy").

34.     In order for coverage to exist under the Policies, there must be "bodily injury," "property damage," or "personal and advertising injury."

35.     The Underlying Complaint does not allege "property damage," nor does the Underlying Complaint allege any physical injury.

36.     In order for coverage to exist under the Policies, the occurrence or the offense must take place during the policy period.  To the extent either the occurrence or the offense did not take place during the policy period, there is no coverage under that policy.

37.     The Policies contain an exclusion for "bodily injury" to an "employee" of the insured arising out of any "termination of that person's employment" or "employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person".  To the extent any bodily injury arising out of wrongful termination is alleged, there is no coverage.

38.     The Employment Practices Endorsement of the Primary Policy contains an exclusion which precludes coverage for "any dishonest, malicious, fraudulent, criminal or intentional 'wrongful act' .... ". In addition, the Primary Policy excludes coverage for "fines, penalties, assessments or duties imposed by state or federal laws". To the extent conduct is proven within the meaning of these exclusion, there is no coverage for the wrongful termination claim under the Primary Policy.

39.     The Primary Policy contains an employment-related practices exclusion which precludes coverage for the malicious prosecution claim.

40.     The Umbrella Liability Coverage is only available if "underlying insurance" does not apply.

41.     The Umbrella Liability Coverage contains an exclusion for personal and advertising injury.  Therefore, there is no coverage for the malicious prosecution claim under the Umbrella Liability Coverage.

42.     The Umbrella Liability Coverage contains an exclusion for employer's liability for bodily injury to an employee as well as an employment-related practices exclusion related to bodily injury. Therefore, there is no Umbrella Liability Coverage for any alleged bodily injury.

43.     To the extent there is insurance under the Primary Policy for the wrongful termination claim, the Umbrella Liability Coverage does not apply.

44.     In order for Excess Liability Coverage to exist, the "underlying insurance" must apply.  Since there is no "underlying insurance" for malicious prosecution, the malicious prosecution claim is not covered under the Excess Liability Coverage.

45.     The Excess Liability/Umbrella Coverage includes an employment-related practices exclusion in the employment practices extension endorsement which precludes coverage for both the wrongful termination and the malicious prosecution claims.

46.     The allegations against Midtown Motors and/or Buzzo in the Underlying Complaint do not trigger coverage, or are otherwise excluded from coverage, under the Policies.

**WHEREFORE**, Sentry Select Insurance Company respectfully requests that this Honorable Court enter judgment in favor of Sentry Select Insurance Company declaring that:

a.      Sentry Select Insurance Company has no duty to defend Midtown Motors and Buzzo under the Policies in the Underlying Litigation;

b.      Sentry Select Insurance Company has no duty to indemnify Midtown Motors and Buzzo under the Policies for any liability that Midtown Motors and/or Buzzo  may incur as a result of the Underlying Litigation; and

     c.       Sentry Select Insurance Company may withdraw from the defense of Midtown Motors and Buzzo in the Underlying Litigation and has no further defense obligations as of the date of the entry of such Order by this Court.

     d.       For its costs, disbursements, and fees as provided by law;

     e.       For such other relief as the Court deems just and equitable.

Respectfully submitted the 3rd day of July, 2017.

**Plaintiff,**
**SENTRY SELECT INSURANCE COMPANY,**
**By Counsel:**


*/s/ Debra Tedeschi Varner*

Debra Tedeschi Varner        (WV State Bar #6501)
  dtvarner@wvlawyers.com
Jeffrey D. Van Volkenburg       (WV State Bar #10227)
  jdvanvolkenburg@wvlawyers.com

McNeer, Highland, McMunn and Varner, L.C.
Empire Building - 400 West Main Street
P. O. Drawer 2040
Clarksburg, WV 26302-2040
Tel: (304) 626-1100 / Fax: (304) 623-3035